# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

ELGIE ABNER, ET AL.

versus

KANSAS CITY SOUTHERN RAILWAY COMPANY

CIVIL ACTION NO. 03-0765
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a "Motion For Declaratory And Injunctive Relief" filed by the plaintiffs. See Record Document 229. The defendant, Kansas City Southern Railway Company ("KCS"), opposes the plaintiffs' motion. See Record Document 240. For the reasons that follow, the plaintiffs' request for declaratory and injunctive relief is **DENIED**.

## I. BACKGROUND

On April 6, 2006, a jury returned a verdict against KCS in favor of the plaintiffs on a hostile work environment claim, awarding each of the eight plaintiffs

$125,000.00 in punitive damages.[1] On April 7, 2006, this court awarded each plaintiff $1.00 in nominal damages pursuant to Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 1044-45 (1978). See Record Document 182. Also on April 7, 2006, this court entered a final judgment in accordance with both the jury verdict and this court's nominal damages ruling. See Record Document 183. The plaintiffs then filed the instant motion for declaratory and injunctive relief.

A.  **Plaintiffs' Requests.**

In their motion, the plaintiffs specifically request improved training of supervisors and employees, the creation of a "monitor" who would report compliance directly to the court, and the establishment of a toll-free number which employees could call to lodge complaints. Based on the rather thin result from the second trial, the plaintiffs have modeled a fairly stringent and all-encompassing consent decree after a similar one found in Equal Employment Opportunity Commission v. Commercial Coating Service, Inc., which was issued in the Southern

---

[1] The jury verdict occurred in the second trial on this matter. The first trial, held in June of 2005, lasted eight days and resulted in a mistrial after the jury was unable to reach a unanimous verdict. The jury in the second trial was presented with the same evidence over the course of nine days, and after careful deliberation, was able to reach a unanimous verdict in favor of the plaintiffs. The jury perceptively found no actual, compensable injury to the plaintiffs, and awarded each plaintiff zero dollars in compensatory damages. However, it did award $125,000.00 in punitive damages.

District of Texas. The particular provisions the plaintiffs contend are applicable to the instant case include (1) improved complaint procedures, (2) a racial harassment policy, (3) anti-discrimination training, (4) posting of the court's requirements in its facilities, (5) improved record keeping, (6) reporting compliance to a special liason, (7) establishment of a liaison who will keep in contact with an EEOC representative, and (8) periodic inspections of KCS facilities. The specifics of the consent decree issued in Equal Employment Opportunity Commission v. Commercial Coating Service, Inc., a copy of which is attached to this ruling, were recited verbatim by the plaintiffs and need not be set forth in detail here.[2]

---

[2] Although the Equal Employment Opportunity Commission v. Commercial Coating Service, Inc. consent decree orders permanent injunctions on certain discriminatory behaviors, it also enjoins the defendant from "engaging in race discrimination under Title VII." See opinion at page 2. Such broad injunctive relief, however, is improper and will not be ordered in the instant case. Indeed, as required by Rule 65 of the Federal Rules of Civil Procedure, an injunction must be "specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained . . . ." Fed. R. Civ. P. 65(d). "This command of specificity is a reflection of the seriousness of the consequences which may flow from a violation of an injunctive order." Payne v. Travenol Lab., Inc., 565 F.2d 895, 897-98 (5th Cir. 1978) (citing Pasadena City Bd. of Educ. v. Spangler, 427 U.S. 424, 438-39, 96 S.Ct. 2697 (1976)). "The word 'discriminating' . . . is too general. . . . Such 'obey the law' injunctions cannot be sustained." See id. at 898 (internal citations omitted).

**B.     KCS's Opposition.**

In its response, KCS asserts that the plaintiffs' proposed decree would be duplicative of the efforts it has already made to eradicate the effects of past discrimination, and as such, is unnecessary. Specifically, KCS maintains that since 2005 it has employed a toll-free hotline called "Speak Up!," by which employees may report employment-related complaints to an independent company. After the birth of this new hotline, KCS revised its anti-harassment and equal employment opportunity policies to include information detailing the way in which the hotline is designed to work. The anti-harassment policy was also revised to "further emphasize KCSR's prohibition on race harassment and to provide examples of prohibited conduct." Record Document 240 at 8. The revised policies, along with information regarding the "Speak Up!" hotline, were distributed to employees' homes in November of 2005. Posters referencing "Speak Up!" were also displayed on KCS's premises.

In addition, KCS's opposition sets forth in detail its current training procedures, its current complaint procedures, the way in which an investigation is conducted, the consequences for an employee who engages in discriminatory conduct in violation of its policies, as well as the consequences for a supervisory employee who does not act promptly on a complaint that has been submitted by a

discontent employee. Finally, KCS contends that it maintains an investigation record of each complaint submitted by its employees.

## II. LAW AND ANALYSIS

Once a plaintiff proves a violation of Title VII . . ., the court is given a "wide variety of relief to combat discriminatory practices" including injunctive and declaratory relief. Meyer v. Brown & Root Constr. Co., 661 F.2d 369, 373 (5th Cir. 1981); see also Vogler v. McCarty, Inc., 451 F.2d 1236, 1238 (5th Cir. 1971) (holding that district courts have "broad discretionary power under Title VII . . . to fashion remedies which prevent future discrimination and remedy the effects of past discrimination"). "After all, throughout its history, Title VII has provided for injunctions to 'bar like discrimination in the future . . . .'" Burlington N. and Santa Fe Ry. Co. v. White, ---- U.S. ----, 126 S.Ct. 2405, 2417 (2006) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418, 95 S.Ct. 2362 (1975) (internal quotation marks omitted)). Such relief, however, is not mandatory, but rather is awarded only after the court balances the equities and arrives at a fair result consistent with the goal of eradicating the effects of past discrimination. See id. at 374 (explaining that a finding that "an employer has intentionally engaged in an unlawful employment practice does not necessitate . . . injunctive relief . . . .").

Although the discretionary remedies under Title VII allow a court to grant

injunctive relief even after the illegal conduct at issue has been discontinued in order to prevent future reoccurrences, "[t]he necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility. . . ." United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct 894 (1953). One steadfast principle of law governing the "permissible scope of federal judicial power" is that there are "fundamental limitations on the remedial powers of the federal courts," such that these powers can "be exercised only on the basis of a violation of the law and [can] extend no farther than required by the nature and the extent of [the] violation" at issue. Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 399, 102 S.Ct. 3141 (1982).

A court may not "enjoin conduct which is neither threatened nor imminent." Cong. of Racial Equal. v. Douglas, 318 F.2d 95, 100 (5th Cir. 1963). Indeed, the court may deny injunctive relief when the discriminatory conduct at issue has already been discontinued and the defendant is not presently abiding by its previous discriminatory policies and practices. Further, the court enjoys the discretion to deny injunctive relief where the defendant has made a good faith effort to remedy the wrong and cease its past discriminatory practices. See Carter v. Gallagher, 452 F.2d 315, 324 (8th Cir. 1971). Thus, one of the most important factors before the court is whether the facts of this case indicate a danger that KCS will engage in

future Title VII violations.

Here, there is simply no evidence that KCS has continued to adhere to its past discriminatory practices. Quite the contrary, the court determines that KCS has, indeed, made a good faith effort to put new practices and policies into effect which will deter future Title VII violations. To be sure, KCS's current practices do not completely mirror the very detailed and specific avenues of relief requested by the plaintiffs. However, complete adherence to the plaintiffs' ideal employment situation is not required.[3] KCS is actively engaged in correcting its past discriminatory conduct and has already implemented many of the ideas suggested in the plaintiffs' proposed consent decree. After reviewing KCS's written submissions, the court finds that its current policies and practices satisfy the majority of the criteria requested by the plaintiffs.

Of utmost importance to this case, however, is not merely the policies outlined on official KCS letterhead and carried out by its employees. Rather, the crux of this longstanding hostile work environment dispute was the character of one former KCS

---

[3] Although the court refrains from "micro-managing" the defendant, it bears noting that KCS may benefit from espousing policies more specifically related to racial discrimination, as this particular type of discrimination lies at the heart of KCS's past problems. The likely alternative to a proper policy pronouncement is the continuation of litigation in this court, which the court would decry.

employee. Indeed, a great portion of the trial was focused on Gary Moore ("Moore"), a former Ku Klux Klan member, who was convicted in this court in a cross-burning episode. At KCS, Moore was promoted into successive supervisory positions, and it was "on his watch" that the events leading to this case occurred. After receiving complaints about Moore in 2002, KCS "took prompt and corrective action to remedy the situation . . . [i]n addition to conducting an immediate investigation, ongoing training, and . . . refining its Anti-Harassment Policy . . . ." Record Document 240 at 24. Ultimately, Moore's employment was terminated.

The court cannot blindly ignore that the plaintiffs' main grievance revolves around an employer who maintained in its employ a man diversely at odds with a great number of its workers. Be that as it may, this particular complaint exists in the past and is not a predictable forecast of the future work environment at KCS. Moore's termination is crucial, as this event arguably went a long way in terminating the hostile work environment about which the plaintiffs complained. Ending Moore's employment with KCS discontinued, in large part, the Title VII violations that were alleged to have occurred.

The evidence indicates that KCS has vastly improved it anti-discrimination policies. Should KCS fail in the future to accord proper attention to such vital employee concerns, this and other court houses exist to bring suits for relief.

-8-

However, based upon the showing made at this time, injunctive relief is not necessary for a just disposition of the case. Accordingly;

**IT IS ORDERED** that the plaintiffs' request for declaratory and injunctive relief (Record Document 229) is **DENIED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 17th day of April, 2007.

JUDGE TOM STAGG