U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

JUN 2 1 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

ELGIE ABNER, ET AL.

versus

KANSAS CITY SOUTHERN RAILWAY
COMPANY

CIVIL ACTION NO. 03-0765
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion for attorneys' fees and costs filed by the plaintiffs. See Record Document 230. Having reviewed the motion, the opposition thereto, and the applicable law, the court finds that an award in the amount of $446,777.12 constitutes reasonable attorneys' fees and costs.

## I.  BACKGROUND

On April 6, 2006, a jury returned a verdict against Kansas City Southern Railway Company ("KCS") in favor of the plaintiffs on a hostile work environment claim, awarding each of the eight plaintiffs $125,000.00 in punitive damages.[1] On

_____

[1] The jury verdict occurred in the second trial on this matter.  The first trial, held in June of 2005, lasted eight days and resulted in a mistrial after the jury was unable to reach a unanimous verdict.  The jury in the second trial was presented with the same evidence over the course of nine days, and after careful deliberation, was able to reach a unanimous verdict in favor of the plaintiffs.

April 7, 2006, this court awarded each plaintiff $1.00 in nominal damages pursuant

to <u>Carey v. Piphus</u>, 435 U.S. 247, 266, 98 S. Ct. 1042, 1044-45 (1978).  <u>See</u>

Record Document 182.  Also on April 7, 2006, this court entered a final judgment

in accordance with both the jury verdict and this court's nominal damages ruling.

<u>See</u> Record Document 183.  The plaintiffs then filed the instant motion, requesting

attorneys' fees in the amount of $463,850.75 and $140,978.42 in costs and

expenses, for a total award of $604,829.17.

## II.  LAW AND ANALYSIS

### A.    The Legal Standard For Fixing Attorneys' Fees.

The plaintiffs are entitled to reasonable attorneys' fees as the prevailing party

in this Title VII and 42 U.S.C. § 1981 case.  <u>See</u> 42 U.S.C. §§ 1988 and 2000e-

5(k).  KCS does not argue otherwise, but rather challenges the number of hours the

plaintiffs' attorneys collectively expended on the litigation.   In addition, KCS

contends that the total award should be reduced because of the plaintiffs' low degree

of success, the jury's relatively small verdict, and the disproportionality of the

requested fee as compared to the plaintiffs' recovery.  <u>See</u> Record Document 239.

---

The jury perceptively found no actual, compensable injury to the plaintiffs, and
awarded each plaintiff zero dollars in compensatory damages.  However, it did
award $125,000.00 in punitive damages to each plaintiff.

In order to calculate the proper amount of attorneys' fees to be awarded, district courts use the lodestar method. See Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998). Under the lodestar method, the court determines the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys. See id. These two figures are multiplied together to arrive at the lodestar. See id. The Fifth Circuit Court of Appeals has stressed that the lodestar is presumptively reasonable and should be adjusted upward or downward only in exceptional circumstances, see Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993), and only if an analysis of the twelve factors set forth in Johnson v. Ga. Highway Express, 488 F.2d 714, 717-19 (5th Cir. 1974), so warrants. The twelve Johnson factors are as follows: 1) the time and labor required for the litigation; 2) the novelty and complexity of the issues; 3) the skill required to properly litigate the issues; 4) whether the attorneys had to refuse other work to litigate the case; 5) the attorneys' customary fee; 6) whether the fee is fixed or contingent; 7) whether the client or case circumstances imposed any time constraints; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) whether the case was "undesirable"; 11) the type of attorney-client relationship and whether that relationship was long-standing; and 12) awards made in similar cases. See Johnson, 488 F.2d at 717-19.

3

The "Supreme Court has twice made clear that the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained." Migis, 135 F.3d at 1047 (citing Farrar v. Hobby, 506 U.S. 103, 114, 113 S.Ct. 566, 574 (1992)) (internal marks omitted).

**B.    Billing Judgment.**

The party requesting an award of attorneys' fees bears the burden of demonstrating the reasonableness of the hours billed and must prove that billing judgment was exercised. See Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of hours written off as unproductive, excessive, or redundant." Id. All "excessive, duplicative, or inadequately documented" time should be eliminated from an attorney's fee award. Watkins, 7 F.3d at 457.  "The hours surviving this vetting process are those reasonably expended on the litigation." Id.; see also Alberti v. Klevenhagen, 896 F.2d 927, 930 (5th Cir. 1990) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off."); Leroy v. City of Houston, 831 F.2d 576, 585 (5th Cir. 1987) (explaining that billing records that lack explanatory details are unacceptable).  "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." Walker v.

4

U.S. Dep't of Housing and Urban Dev., 99 F.3d 761, 770 (5th Cir. 1996).

In the instant case, the plaintiffs failed to carry their burden of proving that they exercised billing judgment.  To be sure, the attorneys boldly claim that billing judgment has been exercised: "prior to submitting this fee application, Plaintiff's [sic] counsel exercised 'billing judgment' by eliminating numerous detailed time entries for which they do not seek compensation.  Specifically, counsel for Plaintiff [sic] has limited requested time entries to those time entries 'demonstrated to be directly attributable only to the pursuit of a claim under Section 2000e-2(m).'" Record Document 230, Ex. 2 at 5.  Further, in a time entry dated April 13, 2004, in reference to the development of a discovery plan, Attorney Gregory Paul ("Mr. Paul") explains that "[b]illing judgment is being exercised not to include attorney fees or travel costs from Attorney Rihn, who did not continue to work on the case . . . ."  Id. at Ex. 4 at 5.  These conclusory assertions do not constitute billing judgment.  In short, the billing records contain no indication of the hours the attorneys wrote off as redundant, unproductive, or excessive during this lengthy litigation.  Accordingly, a downward adjustment of ten percent is warranted to account for billing judgment.[2]

---

[2] The ten percent offset will be applied after all specific, non-compensable or erroneous charges have been subtracted from the initial lodestar figure.

5

**C.    Calculation Of The Lodestar.**

Four attorneys undertook the plaintiffs' representation.  According to the Time and Expense Report submitted by Mr. Paul, he, along with S. Reed Morgan ("Mr. Morgan"), Robert Gilliken ("Mr. Gilliken"), and two paralegals worked on the plaintiffs' case for a total of 1,917.40 hours.  See Record Document 230, Ex. 4 at 32.  In addition, Nelson Cameron ("Mr. Cameron") and his paralegal worked on the case for a combined total of 153.25 hours.  See Record Document 230, Ex. 5 at 42.

The plaintiffs seek an award of $463,850.75 in attorneys' fees, which reflects approximately 1,175.8 hours at $250/hour for Mr. Paul, approximately 387.8 hours at $250/hour for Mr. Morgan,  and approximately 220.5 hours at $165/hour for Mr. Gilliken.[3]  In addition, the plaintiffs seek compensation for approximately 102 hours at $75/hour for paralegal Jeff Pflugh and approximately 31.3 hours at $75/hour for

---

[3] These approximations were derived from the court's own mathematical computations.  The attorneys failed to set forth each participating attorney's total number of expended hours.  Thus, the numbers above were calculated by dividing the total amount of money sought for each attorney by that attorney's hourly rate.  However, it would prove too burdensome for the court to determine how many hours of work Mr. Cameron performed on this case, for his bill includes not only his time, but also his paralegal's time.  Suffice it to say that Mr. Cameron and his paralegal worked on the case for a combined total of 153.25 hours.

6

paralegal Karen Kozikowski.[4]  In total, Mr. Paul's requested compensation totals $293,950, Mr. Morgan's totals $96,950, Mr. Cameron's totals $26,503.75, Mr. Gilliken's totals $36,449.50, Mr. Pflugh's totals $7,650, and Ms. Kozikowski's totals $2,347.50.

In order to determine whether the time was reasonably spent, the court must review the time records and "exclude all time that is excessive, duplicative or inadequately documented." Hensley v. Eckerhart, 461 U.S. 424, 431, 103 S.Ct. 1933, 1939 (1983).

## 1. Reasonable Hourly Rate.

KCS does not dispute the hourly rates for either the attorneys or the paralegals.  When a requested hourly rate is not contested, "it is prima facie reasonable." La. Power and Light Co. v. Kellstrom, 50 F.3d 319, 328 (5th Cir. 1995).  There is no basis for the court to conclude that the rates requested are excessive or require a reduction.  Therefore, the hourly rates submitted by the plaintiffs are deemed reasonable and should be awarded.

---

[4] Once again, these numbers were reached through the above formulation.

## 2. Hours Reasonably Expended.

The court must now determine the reasonable number of hours that the plaintiffs' legal team expended on the case. Based on the billing reports submitted for the court's review, there are numerous entries that the court finds troublesome. First, Mr. Gilliken's time should have been billed at $165 per hour. See Record Document 230, Ex. 2 at 7. However, on August 17, 2004 and August 24, 2004, his time was billed at a rate of $175 per hour. See Record Document 230, Ex. 4 at 6. Using the correct rate of $165, a reduction of $67 is warranted. This reduction will be applied to the initial lodestar calculation.

Further, Mr. Cameron's bill reflects what appears to be a duplicate entry. On May 27, 2005, two separate time entries were entered, both of which describe the activity as "objetions [sic] to exhibits, research, drafting, reading emails from paul." Record Document 230, Ex. 5 at 27. Both entries claim seven hours were expended, for a total charge of $1,225. The court concludes that these entries were erroneously duplicated and that one entry must be eliminated from the total bill. This results in a reduction of $1,225.

As will be delineated below, a number of entries strike the court as duplicative, excessive, vague, or inadequately documented such that the court is unable to determine if the time was indeed "reasonable." For instance, on June

18, 2005, Mr. Paul spent eighteen hours on "Trial Preparation" at a charge of $4,500; on the same day, Mr. Gilliken spent twelve hours on "trial preparation in Shreveport (2 days before trial)" at a charge of $1,980; on June 19, 2005, Mr. Gilliken spent an additional twelve hours on "trial preparation in Shreveport (1 day before trial)" at a charge of $1,980; on November 13-17, 2005, Mr. Paul performed "case work 24 hours" at a charge of $6,000; on November 14-16, 2005, Mr. Morgan performed "case work 18 hours" at a charge of $4,500; on December 1-2, 2005, Mr. Morgan performed "case work 16 hours" at a charge of $4,000; and on December 1-3, 2005, Mr. Paul performed "case work up 18 hours" at a charge of $4,500. While the court does not doubt the necessity of the time spent preparing for trial and strategizing post-mistrial, it is impossible to judge the reasonableness of the time expended from such ambiguous descriptions.

The billing records are permeated with ambiguities such as those described above. Indeed, during preparation for the second trial, similar entries appear once again. For example, on March 7-9, 2006, Mr. Paul's time entry reads "case review 26 hours" at a charge of $6,500; on March 7-9, 2006, Mr. Morgan spent twenty-six hours on "Trial Preparation March 7-9 w/ Paul," at a charge of $6,500;[5] on March

---

[5] It is curious that Mr. Morgan charges twenty-six hours for trial preparation on March 7-9, 2005 when he had previously charged six hours on

22, 2006, Mr. Paul spent seventeen hours on "Preparation for Trial," at a charge of $4,250; on March 23, 2006, Mr. Paul spent an additional fourteen hours on "Preparation for Trial," at a charge of $3,500; on March 23, 2006, Mr. Morgan used fourteen hours to "Prepare for trial/meet with Greg Paul," at a charge of $3,500; on March 24, 2006, Mr. Morgan spent sixteen hours to "Prepare Witnesses for trial," at a charge of $4,000; on March 24, 2006, Mr. Paul spent sixteen hours on "Preparation for trial- meet with witnesses, co-counsel . . .," at a charge of $4,000; on March 25, 2006, Mr. Paul spent eighteen hours on "Preparation for trial," at a charge of $4,500; on that same day, Mr. Morgan spent eighteen hours on "Trial Preparation," at a charge of $4,500; on March 26, 2006, Mr. Morgan spent another sixteen hours on "Trial Preparation," at a charge of $4,000; on that same day, Mr. Paul used sixteen hours to "Meet with co-counsel in preparation for trial," at a charge of $4,000; and on April 1, 2006, Mr. Morgan spent twelve hours on "Trial Preparation," at a charge of $3,000.  Further, the court notes that each trial day for which each attorney charged time reflects more time than that actually spent in the trial. For instance, Mr. Paul's entry on March 27, 2006 reads "Trial

---

March 6-8 to "Meet with Greg Paul in Comfort, TX for case review."  Perhaps the March 6-8 time entry is actually Mr. Morgan's travel time to Comfort, Texas, but such could only be known through more explanatory descriptions.

(First day)" but reports eighteen hours spent for a total charge of $4,500.

While the court firmly believes that long hours are necessarily spent during the progression of a discrimination trial, it cannot judge the reasonableness of the time expended with descriptions as scant as these.  The court does not intend to engage in a line-by-line recitation of every hour worked by plaintiffs' attorneys.  It does note for the record, however, that ambiguity and vagueness are not the only things plaguing this bill.  Indeed, excessive charges[6] and charges for what appears to be clerical work[7] can be found, as well.

Similar problems afflict Mr. Cameron's bill.  For instance, on August 24, 2005, he charged $52.50 for an activity described as "to greg, 2x lmtc."  On September 27, 2005, he charged $35 for an activity described as "GOOD TIME TO

_____

[6] For example, on September 2, 2004, Mr. Paul drafted a letter to the plaintiffs regarding depositions and charged $750 for three hours of work; on February 7, 2005, Mr. Paul drafted a letter to Leonard Biermann regarding "compilation of materials for expert report," charging $2,250 for nine hours of work; and on February 15, 2005, Mr. Paul drafted another letter to Mr. Biermann "regarding documents with additional documents for expert report," charging $750 for three hours of work.

[7] The court believes that a "check request for witness fees and mileage" is more akin to clerical work than legal work.  However, Mr. Paul charged $250 for one hour of such work on October 6, 2004, $25 for six minutes of such work on October 7, 2004, $25 for six minutes of work on October 8, 2004, and $25 for six minutes worth of such work on November 9, 2004.  The Fifth Circuit has cautioned that "[c]lerical work . . . should be compensated at a different rate from legal work."  Walker, 99 F.3d at 770.

11

SETTLE??"  On February 6, 2006, an activity presumably related to printing was labeled merely "no" and $0.25 is charged.  On February 17, 2006, Mr. Cameron reviewed "motion by def" and charged $17.50.  These are not isolated examples, but rather are indicative of the whole.

Attorneys cannot be rewarded for failing to comply with basic billing requirements.  Accordingly, based on the aforementioned concerns, a fifteen percent reduction is warranted.[8]

In addition, KCS urges that the plaintiffs cannot be allowed to recover fees for time expended on unsuccessful claims, including class action allegations and charges for work, travel, and expenses incurred during the first trial.  The court will review each of these in turn.

### a.  Success Obtained.

Generally, a party is not entitled to attorneys' fees for the work performed on an unsuccessful claim.  See Hensley, 461 U.S. at 435, 103 S.Ct. at 1940  Thus, in a lawsuit in which distinctly different claims are alleged, each based on different facts and legal theories, "counsel's work on one claim will be unrelated to his work

---

[8] The fifteen percent offset will be applied after all specific non-compensable or erroneous charges have been subtracted from the initial lodestar figure.

12

on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." Id. at 435, 103 S.Ct. at 1940 (internal quotations omitted).

> Many civil rights cases will present only a single claim.  In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Id.  The Supreme Court has further instructed that in a lawsuit comprised of multiple, related claims, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Id. at 440, 103 S.Ct. at 1943.  The Fifth Circuit Court of Appeals has explained that the "proper focus is whether the plaintiff has been successful on *the central issue* . . . as exhibited by the fact that he has acquired *the primary relief sought*." Commonwealth Oil Refining Co., Inc. v. EEOC, 720 F.2d 1383, 1385 (5th Cir.1983) (quoting Iranian Students Ass'n v. Edwards, 604 F.2d 352, 353 (5th Cir.1979)) (emphasis in original).  "In many if not most lawsuits, whether tried or settled, it is possible to compare the allegations made with the results obtained and pick out a winner: a plaintiff who carried the day on his major

13

claim, a defendant who defeated the major thrust of the suit." Commonwealth Oil,

720 F.2d at 1385-86. The district court has broad discretion in deciding whether

successful claims and unsuccessful claims are related to one another.

Because the hours billed must have been for time reasonably spent on work

in furtherance of claims on which the plaintiffs prevailed, see Von Clark v. Butler,

916 F.2d 255, 259 (5th Cir. 1990), the plaintiffs can be awarded no fees for the time

and effort expended on the motion for injunctive and declaratory relief, as such

motion was denied. This results in a reduction of $3,625.

Likewise, the plaintiffs cannot recover fees for time expended on the research

of class action issues. Mr. Paul spent two hours for a total of $500 researching the

issue, while Mr. Gilliken researched for 1.3 hours for a total charge of $214.50.

Because the class action issue was not necessary or integral to the pursuit of the

racial discrimination claim, such charges cannot be sustained. Therefore, a

reduction of $714.50 is appropriate. In addition, on April 14, 2003, Mr. Paul's time

entry reflects "Development of discovery plan with attorney Aaron Rihn from Peirce

Law Office who travelled [sic] with and attended Scheduling Conference. (Billing

judgment is being exercised not to include attorney fees or travel costs from

Attorney Rihn, who did not continue to work on case *re: class allegations*)."

Record Document 230, Ex. 4 at 5 (emphasis added). Six hours were charged for

**14**

this entry for a total of $1,500.   The entry is vague as to the nature of the
"development of discovery plan," but the court believes that this charge should be
eliminated from the bill, as it likely involved work on class action issues.   Thus, an
addtional $1,500 reduction is appropriate.

### b.  Recovery For First Trial.

KCS's second argument is that the plaintiffs should not be permitted to
recover attorneys' fees for the time expended and costs incurred in connection with
the first trial, which resulted in a mistrial.   Wholly without citation, KCS blankly
asserts that the "Fifth Circuit does not authorize an award of attorney's fees for such
work . . . ."   Record Document 239 at 12.   It is very telling that KCS could not find
support for such a bold statement.

Although this court's own research garnered little guidance from the Fifth
Circuit, other circuits have addressed this issue.   Indeed, the First, Second, and
Seventh Circuits have held that the prevailing party in a subsequent trial may recover
fees for work done for and in a prior trial.   See Shott v. Rush-Presbyterian-St.
Luke's Med. Cntr., 338 F.3d 736, 739 (7th Cir. 2003) (allowing attorneys' fees for
a second trial, so long as the prevailing party's actions did not necessitate the need
for the subsequent trial); O'Rourke v. City of Providence, 235 F.3d 713, 737 (1st
Cir. 2001) (allowing prevailing plaintiff to recover attorneys' fees for both first and

**15**

second trial); <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 876-79 (2nd Cir. 1998) (allowing recovery of attorneys' fees for time spent in connection with three trials on same matter). Moreover, the <u>Hensley</u> Court instructed lower courts to focus on the "ultimate result." <u>Hensley</u>, 461 U.S. at 435, 103 S.Ct. at 1940. Indeed, "[w]hen two trials are required to achieve the 'ultimate result,' a plaintiff should be compensated for both trials, so long as the time spent at both was 'reasonably expended.'" <u>Shott</u>, 338 F.3d at 739. Thus, that the first trial here resulted in a mistrial is not dispositive. The critical question is whether the time spent preparing for and conducting the first trial was reasonable. <u>See Jaffee v. Redmond</u>, 142 F.3d 409, 414, 416 (7th Cir. 1998) (stating that "[w]hat must be addressed, in considering this litigation in its entirety, is whether the expenditure of counsel's time was reasonable in relation to the success achieved."). With the exception of the unreasonable entries previously detailed above, the court finds that the remainder of the time devoted to this litigation was reasonably spent.

In accordance with the above findings, the court calculates the lodestar as follows:

| | |
|---|---|
| Plaintiffs' Requested Fee Award | $463,850.75 |
| Improper Rate for Mr. Gilliken | - $67.00 |
| Duplicate Time Entry For Mr. Cameron | - $1225.00 |
| Non-compensable Work For Motion For Injunctive And Declaratory Relief | - $3,625.00 |

| | |
|---|---|
| Research On Class Action Issues | - $714.50 |
| Conference On Class Action Issues | - $1,500.00 |
| | $456,719.25 |
| Ten Percent Reduction For Billing Judgment | x      10% |
| | $411,047.32 |
| Fifteen Percent Reduction For Vague And Inadequately Documented Entries | x      15% |
| **Lodestar** | **$349,390.22** |

## D.   Upward Or Downward Adjustment Of The Lodestar.

Having calculated the lodestar amount as $349,390.22, the court must now consider the twelve <u>Johnson</u> factors to determine whether an adjustment is warranted.  There is a strong presumption that the lodestar is reasonable.  <u>See</u> <u>Walker</u>, 99 F.3d at 771.  The moving party bears the burden of proving that an enhancement "is *necessary* to the determination of a reasonable fee." <u>Walker</u>, 99 F.3d at 771.  In considering the <u>Johnson</u> factors, the Supreme Court has instructed that the most critical factor for a fee award is the degree of success obtained.  <u>See</u> <u>Farrar</u>, 506 U.S. at 114, 113 S.Ct. at 574.  "This factor is particularly crucial when, as in this case, a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims." <u>Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.</u>, 158 F.3d 205, 209 (5th Cir. 1998).

17

Here, the court finds that only three factors militate in favor of an upward adjustment in the award.  Looking at the first and seventh factors together, the court agrees that this litigation was time and labor intensive and imposed significant time constraints on the attorneys' ability to work on other cases.  However, the Fifth Circuit has warned that the first factor "is already included in the lodestar" and the "seventh factor is subsumed in the number of hours reasonably expended." Walker, 99 F.3d at 771-72.  Thus, those are inappropriate bases upon which to impose an enhancement.  While the court believes that there was a certain level of skill required to successfully litigate this case, that alone does not support an enhancement.  The remainder of the Johnson factors do not warrant an enhancement for the plaintiffs.

KCS argues that a downward adjustment is appropriate due to the plaintiffs' limited success.  KCS is correct in its assertion that "limited success requires a downward adjustment." Walker, 99 F.3d at 772.  Nonetheless, the court finds that the plaintiffs succeeded on their major claim of discrimination.  Although the plaintiffs originally pursued several different claims, the relief sought in all of these claims was an attempt to vindicate the same right, as each allegation was designed to achieve the same result.  At the end of the day, the winner is clear: the plaintiffs successfully proved a Title VII violation.  As this was the major thrust of the

**18**

litigation, the court declines to adjust the lodestar amount for limited success.

**E.    Costs.**

The plaintiffs seek an award of $140,978.42 in out-of-pocket expenses incurred during the course of this litigation, including reimbursement of travel expenses, lodging, food, long-distance telephone calls, postage, copying, printing, and facsimile costs.  Pursuant to 28 U.S.C. § 1920, a court may tax as costs:  fees of the clerk and the marshal, fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for exemplification and copies of papers necessarily obtained for use in the case, docket fees, compensation of court-appointed experts, interpreters, and special interpretation services.

Many of the costs at issue here--travel expenses, lodging, food, postage, facsimile, and long-distance phone charges--are not included in section 1920's enumerated list.  See 28 U.S.C. § 1920.  However, the Supreme Court has declared that reimbursement of a non-enumerated cost is permitted when explicit statutory authority authorizes the court to do so.  See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445, 107 S.Ct. 2494, 2499 (1987); see also Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 529 (5th Cir.2001).

In the Title VII sector, there exists explicit statutory authority permitting the

**19**

recovery of costs that are otherwise not recoverable under section 1920.  Indeed, 42 U.S.C. § 2000e-5(k) expands the power of the court to award "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs." Mota, 261 F.3d at 529 (internal marks omitted); see also Mennor v. Fort Hood Nat'l Bank, 820 F.2d 553, 557 (5th Cir. 1987).  The Fifth Circuit requires the moving party to bear the burden of proof in supporting its request for costs with documentation of the costs incurred and evidence that a specific item was "necessarily obtained for use in the case."  Fogleman v. ARAMCO (Arabain Am. Oil Co.), 920 F.2d 278, 285-86 (5th Cir. 1991).  Because this is a factual finding to be made by the district court, the Fifth Circuit accords the court "great latitude" in making such determination.  Id.

Here, there are a number of requested costs the court will disallow.  First, Mr. Paul submitted numerous American Express charges incurred during 2004. These charges total $17,287, but there is no documentation or support for the listed charges.  Rather, the bill of costs merely states that "[b]ills from 2004 are being retrieved from Storage."  Record Document 230, Ex. 9 at 1-4.  However, to date, the court has not received any supplementary information with respect to these

**20**

charges.  The court simply cannot award costs for inadequately documented charges

of which it has no knowledge.  Thus, the 2004 American Express charges, in the

amount of $17,287, are disallowed.  Furthermore, the court will disallow the

charges for legal research, totaling $15,000, for such charges are neither enumerated

under section 1920, nor are they specifically accepted by the Fifth Circuit under the

expanded authority of section 2000e-5(k).[9]

In addition, Mr. Cameron requested $379 solely for facsimile costs.  Charging

$1.00 per page, Mr. Cameron contends that he consulted Kinko's, USA Services

Network, Mail Boxes, Etc. and Packages Plus to find that the "uniform rate for

faxes is $1.00 per page for local calls."  Record Document 230, Ex. 5 at 6.  While

the court is more inclined to allow charges for long-distance faxes, it believes that

local faxes should not be compensable, as they are more akin to local telephone

calls.  A local phone call is considered as part of the normal overhead of running a

business.  Because there is no separation of local and long-distance faxes in the bill

of costs, the court will impose a reduction of twenty percent, or $75.80 to account

---

[9] In Migis v. Pearle Vision, Inc., 944 F.Supp. 508, 518 (N.D.Tx. 1996),
the district court disallowed expenses for Westlaw charges, finding that such
charges are similar to overhead charges.  On review, the Fifth Circuit found no
abuse of discretion in the district court's decision.  See Migis v. Pearle Vision,
Inc., 135 F.3d 1041, 1048-49 (5th Cir. 1998).

for local faxes.  The plaintiffs also seek to recover $710.44 for what appears to be a videotaped deposition.  The Fifth Circuit has not held a videotaped deposition to be the sort of out-of-pocket expense recoverable under either section 1920 or under section 2000e-5(k), for it is not an expense akin "to postage and long-distance telephone calls."  Mota, 261 F.3d at 530; see also West v. Nabors Drilling USA, Inc., 330 F.3d 379, 396 (5th Cir. 2003)  Accordingly, this expense must be disallowed.

Finally, the court will disallow the following charges from Mr. Paul's and Mr. Morgan's bill of costs on the basis of vagueness, inadequate documentation, or failure to substantiate the necessity of such charges:

1.    "Document Solution Charges: Ditto"        $1,771.34[10]

2.    "Bindertek"                               $231.62[11]

3.    "Staples"                                 $210.74[12]

4.    "LRP Publications"                        $307.40[13]

---

[10] Record Document 230, Ex. 9 at 9.

[11] Record Document 230, Ex. 9 at 11.

[12] Record Document 230, Ex. 9 at 11.

[13] Record Document 230, Ex. 9 at 11.

5.    "Kinkos"                                     $148.94[14]

6.    "Office Depot"                         $122.67[15]

7.    "American Express . . . Travel"      $981.83[16]

8.    "American Express . . . Travel"      $751.97[17]

9.    "Reed Morgan . . . misc"              $140.00[18]

10.    "Reed Morgan . . . milage [sic]"      $400.00[19]

11.    "Sue Bramlett . . . Summary"        $100.00[20]

12.    "American Express . . . Travel"      $2,513.29[21]

13.    "Jeanene Deen . . . Milage [sic]"     $158.87[22]

9.    "Reed Morgan . . . Dave Clark"      $2,500[23]

---

[14]  Record Document 230, Ex. 9 at 11.

[15]  Record Document 230, Ex. 9 at 11.

[16]  Record Document 230, Ex. 10 at 1.

[17]  Record Document 230, Ex. 10 at 1.

[18]  Record Document 230, Ex. 10 at 1.

[19]  Record Document 230, Ex. 10 at 1.

[20]  Record Document 230, Ex. 10 at 1.

[21]  Record Document 230, Ex. 10 at 1.

[22]  Record Document 230, Ex. 10 at 1.

[23]  Record Document 230, Ex. 10 at 1.

15.    "American Express . . . Meals, ect. [sic]"  $179.61[24]

In all, the disallowance of these charges results in a total offset of $43,591.52. Subtracting $43,591.52 from the requested costs award of $140,978.42 results in $97,386.90.  The court finds this to be an appropriate award.

### III. CONCLUSION

Applying the standards set forth above, the court finds that an award of attorneys' fees in the amount of $349,390.22 and a costs award of $97,386.90, for a total award of 446,777.12, is both reasonable and appropriate in this case.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 21st day of June, 2007.

_____
JUDGE TOM STAGG

---

[24]  Record Document 230, Ex. 10 at 1.

24